UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETWORKTWO COMMUNICATIONS
GROUP, INC.

              Plaintiff/Counter-Defendant,

v.

SPRING VALLEY MARKETING GROUP
and COMMUNITYISP, INC.,

              Defendants/Counter-Plaintiffs.
_____/

Case No. 99-72913-DT

Chief Judge Lawrence Zatkoff

Magistrate Judge Morgan

| | |
|---|---|
| Stephen M. Potter (P33344)<br>Daniel E. Morrisroe (P38369)<br>POTTER, DEAGOSTINO CAMPBELL<br>   & O'DEA<br>Attorneys for Plaintiff/Counter-Defendant<br>2701 Cambridge Court, Suite 223<br>Auburn Hills, Michigan 48326 | Cameron J. Evans (P47276)<br>HONIGMAN MILLER SCHWARTZ AND COHN LLP<br>Attorneys for Defendant/Counter-Plaintiff<br>2290 First National Building<br>Detroit, Michigan 48226<br>(313) 465-7370 |
| Of Counsel: | |
| Kevin J. O'Connor<br>TESTA HURWITZ & THIBEAULT<br>High Street Tower<br>125 High Street<br>Boston, Massachusetts 02110<br>(617) 248-7000 | Randall A. Smith<br>SMITH, JONES & FAWLER, L.L.P.<br>Attorneys for Defendant/Counter-Plaintiff<br>201 St. Charles Avenue, Suite 3702<br>New Orleans, Louisiana 70170<br>(504) 525-2200 |

_____/

## DEFENDANT/COUNTER-PLAINTIFF COMMUNITYISP, INC.'S
## MOTION FOR SUMMARY JUDGMENT

Defendant/Counter-Plaintiff CommunityISP, Inc. ("CommunityISP "), by and through its

attorneys, moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to grant

CommunityISP summary judgment, finding in its favor on its claim for breach of contract

against Plaintiff/Counter-Defendant NetworkTwo Communications Group, Inc. ("NetworkTwo")

and awarding damages in its favor in the amount of Three Hundred Thousand Dollars and Zero



Cents ($300,000.00), for the reasons fully set forth in the attached Brief in Support of Motion for Summary Judgment.

Respectfully submitted,

SMITH & FAWER, L.L.C.

By: _____
　　　　Randall A. Smith
　　　　Andrew L. Kramer
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
(504) 525-2200

Local Counsel

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: _____
　　　　Cameron J. Evans (P47276)
2290 First National Building
Detroit, Michigan 48226
(313) 465-7370

Dated: October 7, 2002

DET_B\345514.1

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETWORKTWO COMMUNICATIONS
GROUP, INC.

            Plaintiff/Counter-Defendant,

v.

SPRING VALLEY MARKETING GROUP
and COMMUNITYISP, INC.,

            Defendants/Counter-Plaintiffs.

_____/

Case No. 99-72913-DT

Chief Judge Lawrence Zatkoff

Magistrate Judge Morgan

Stephen M. Potter (P33344)
Daniel E. Morrisroe (P38369)
POTTER, DEAGOSTINO CAMPBELL
    & O'DEA
Attorneys for Plaintiff/Counter-Defendant
2701 Cambridge Court, Suite 223
Auburn Hills, Michigan  48326

Of Counsel:

Kevin J. O'Connor
TESTA HURWITZ & THIBEAULT
High Street Tower
125 High Street
Boston, Massachusetts 02110
(617) 248-7000

Cameron J. Evans (P47276)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Defendant/Counter-Plaintiff
2290 First National Building
Detroit, Michigan 48226
(313) 465-7370

Randall A. Smith
SMITH, JONES & FAWLER, L.L.P.
Attorneys for Defendant/Counter-Plaintiff
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana  70170
(504) 525-2200

_____/

**DEFENDANT/COUNTER-PLAINTIFF COMMUNITYISP, INC.'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

ISSUES PRESENTED.................................................................................................... ii

INDEX OF AUTHORITIES......................................................................................... iii

I.  INTRODUCTION .................................................................................................. 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................... 2

III.  PROCEDURAL BACKGROUND........................................................................ 8

IV.  ARGUMENT......................................................................................................... 10

    A.  There Is No Dispute that NetworkTwo
       Breached Its Obligations In the Services Agreement ..................................... 10

    B.  There Is No Dispute that CommunityISP Incurred $300,000 in
       Damages as a Direct Result of NetworkTwo's Breach of the Services Agreement......... 11

V.  CONCLUSION...................................................................................................... 12

## **ISSUES PRESENTED**

I.      WHEN NETWORKTWO'S INTERNET SERVICES HAVE CHRONIC CONNECTION PROBLEMS AND THEN NETWORKTWO ADMITS THAT IT IS UNABLE TO FULFILL THE REQUIREMENTS OF THE SERVICES AGREEMENT TO PROVIDE AVAILABLE, RELIABLE AND FAST INTERNET CONNECTION SERVICES TO COMMUNITYISP, HAS NETWORKTWO BREACHED THE CONTRACT?

|                              |     |
|------------------------------|-----|
| CommunityISP Answers:        | Yes |
| NetworkTwo Answers:          | No  |
| This Court Should Answer:    | Yes |

II.     WHEN, AFTER ADMITTING THAT IT IS UNABLE TO FULFILL THE REQUIREMENTS OF THE SERVICES AGREEMENT, NETWORKTWO FAILS TO RETURN A $100,000.00 COMMITMENT FEE PAID BY COMMUNITYISP IS COMMUNITYISP ENTITLED TO A DAMAGE AWARD OF $100,000.00?

|                              |     |
|------------------------------|-----|
| CommunityISP Answers:        | Yes |
| NetworkTwo Answers:          | No  |
| This Court Should Answer:    | Yes |

III.    WHEN COMMUNITYISP IS REQUIRED TO PAY $200,000.00 TO OTHER SERVICE PROVIDERS AS A DIRECT RESULT OF NETWORKTWO'S AFFECTED TRANSMISSIONS, IS COMMUNITYISP ENTITLED TO A DAMAGES AWARD OF $200,000.00?

|                              |     |
|------------------------------|-----|
| CommunityISP Answers:        | Yes |
| NetworkTwo Answers:          | No  |
| This Court Should Answer:    | Yes |

## <u>INDEX OF AUTHORITIES</u>

### <u>Cases</u>

*Webster v. Edward D. Jones & Co.*, 197 F.3d 815 (6th Cir. 1999) ............................................. 10

# I.  **INTRODUCTION**

This case is about Plaintiff/Counter-Defendant NetworkTwo Communications Group, Inc. ("NetworkTwo") breaching its contract with Defendant/Counter-Plaintiff CommunityISP, Inc. ("CommunityISP") to provide internet service to CommunityISP's customers.  In the Master Communications Services Agreement ("Services Agreement" or "Agreement") entered into between the parties in August 1998, NetworkTwo represented its internet services would be available over 95.5% of the time, reliable and as fast as the industry standard allowed. Specifically, NetworkTwo agreed that would use reasonable efforts to increase access speed from 33.6 kilobytes per second (kbps) to the internet standard of 56 kbps.  In return, CommunityISP agreed to pay for internet services from NetworkTwo and to pay NetworkTwo a "commitment fee" in the amount of $100,000.00, which the parties expressly agreed would be credited to CommunityISP by NetworkTwo as soon as CommunityISP reached a specified numbers of internet users.

Almost immediately after signing the Services Agreement, NetworkTwo began a study to see whether it could, in fact, increase the access speed to 56 kbps with reasonable efforts. After a dismal performance of its products and services, including chronic transmission problems, throughout the fall of 1998, NetworkTwo decided that it would be "too expensive" for it to convert to 56 kbps, despite an express commitment in the Services Agreement to do so.  In November 1998, less than three months after the Services Agreement was executed, NetworkTwo notified CommunityISP of its decision not to increase access speed to 56 kbps. NetworkTwo also recommended that CommunityISP seek the services that NetworkTwo had agreed to provide to it from another internet access provider.

1

After NetworkTwo notified CommunityISP that it could not provide the services set forth in the Services Agreement and suggested finding a new service provider, CommunityISP immediately attempted to mitigate its damages and entered into a new agreement with a company called SplitRock Communications Group, Inc. ("SplitRock"). As part of its agreement with SplitRock, CommunityISP was required to pay another $100,000.00 commitment fee. Additionally, CommunityISP was forced to pay $100,000.00 to a company called NetSurfer, Inc. ("NetSurfer") in order to create a CD-ROM that provided the software CommunityISP's customers needed to access the internet -- software that NetworkTwo had expressly contracted to provide as part of the Services Agreement. Thus, not only has CommunityISP lost its $100,000.00 commitment fee paid to NetworkTwo, CommunityISP also incurred another $200,000.00 as a direct result of NetworkTwo's inability to provide the contracted services and its ultimate breach of the Agreement.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     In May 1997, the owners of a company from Holland, Ohio called Spring Valley Marketing Group ("SVMG"), which is a corporate agent for WorldCom, Inc., started an Internet business specializing in hosting online web-sites (also referred to as "domains" ) for other companies, associations and organizations. Originally, the new company was called Spring Valley OnLine, L.L.C. ("SVOL"), but changed its name to CommunityISP, Inc., in August 1998.[1]

---

[1] See the declaration of Jeff Klingshirn, attached as Ex. A (p.1).

2.     On or about August 27, 1998, CommunityISP and NetworkTwo entered into a Master Communications Services Agreement ("Services Agreement"), by which NetworkTwo agreed to provide internet access to CommunityISP's customers until August 18, 2001.[2]

3.     In the Services Agreement, NetworkTwo specifically committed to provide CommunityISP with:

> ... (i) the NetworkTwo services and/or equipment, including computer hardware and software installed on the equipment, (hereinafter referred to as the "Equipment") set forth in the Schedule(s) attached (the "Fixed Services") . . .[3]

4.     Schedule C attached to the Services Agreement specifically identified the quality of services NetworkTwo agreed to provide:

### Schedule C

### INTERNET ACCESS PERFORMANCE AND LEVEL 2 SUPPORT

**A.     Network Performance**

NetworkTwo will use reasonable efforts to comply with the network performance standards below:

1.     Availability

a.     The network including Internet access will be available no less than 95.5% of the time per month.

2.     Reliability

a.     **Time to Problem Resolution** - NetworkTwo will use reasonable efforts to resolve all network problems within one (1) hour of notice of existence of the problem ...

b.     **Subscribers per Modem** - NetworkTwo will use reasonable efforts to maintain a 10-15 subscribers per

---

[2] See Ex. A (p. 2), the deposition of Jeff Klingshirn, attached as Ex. B (pp. 21-22), and the Services Agreement attached as Ex. C.

[3] Ex. C (p.1).

modem ratio throughout the network to help ensure that a minimum of busy signals are received by Internet subscribers.

3.   Dial Access Services

**a.   Dial Access Speeds -** The NetworkTwo dial access network will support dial speeds up to and including 33.6 kbps.   Certain NetworkTwo Points of Presence (POPs) support 56 kbps.   Upon the industry standardization of 56 kbps technology, NetworkTwo will commit to support of the 56 kbps standard within 60 business days of NetworkTwo's reasonable determination that such standardization has been properly established in the industry.[4]

5.   In the Services Agreement, NetworkTwo also agreed to create a CD-ROM (also known as the "surfer kit" ), which would provide the software CommunityISP's customers would need to access the internet:

**Schedule F**

**LEVEL 1 SUBSCRIBER SUPPORT**

. . .

**E.   SUBSCRIBER SETUP AND INITIALIZATION**

. . .

**Initialization Package Contents**

NetworkTwo, or its contracted provider(s), will develop a fulfillment package (surfer kit) which is to include the following:

**MASTER CD**

One Master CD featuring a simple, user friendly, self installing and branding process supporting Windows 95 dial up connection. 450 Megabytes will remain available on the CD for other Customer supplied software.   Included

---

[4] Id. (p.10).

will be simple instructions that are required to begin the installation process. [5]

6.    As part of the Services Agreement, NetworkTwo required CommunityISP to pay a $100,000.00 "commitment fee":

### Schedule D

### INTERNET ACCESS PRICING SCHEDULE
### SUBSCRIBER CHARGES

. . .

**B.    Commitment Fee**

In addition to any other fees and/or obligations to be paid by Customer to NetworkTwo in connection with this Agreement, Customer will pay a commitment fee to NetworkTwo in the amount of $100,000.00 in order to partially compensate NetworkTwo for its expenses in developing increased technical and service infrastructure support in anticipation of increased subscription volume caused by Customer's activities involving its End Users.

**C.    Volume Discounts and/or Penalties**

...

If Customer has reached a level of 200,000 paid subscribers as described above prior to the expiration of the 24th month, then NetworkTwo shall provide Customer a bonus credit in the amount of $100,000 on its firstvoice for service following the month in which Customer has obtained 100,000 paid subscribers as described above.[6]

7.    During the first few weeks of September 1998, immediately after the Services Agreement was executed, significant problems arose due to NetworkTwo's inadequate surfer kit,

---

[5] Id. (p. 18).

[6] Id. (p. 15).

the network's inability to handle the majority of CommunityISP's customers and its failure to respond to customer service complaints.[7]

8.      For example, CommunityISP entered into an agreement with Sony Music Entertainment, Inc. ("Sony") to provide Internet services for hundreds of its artists. The first website that SVOL agreed to host for Sony was called "Kissonline" on behalf of the internationally renowned band, KISS. As a direct and proximate result of the extensive problems with NetworkTwo's services, which were not timely or properly resolved, Sony terminated its contract with CommunityISP and gave its business to another company. Problems similar to Sony's that were directly attributable to NetworkTwo's failures plagued CommunityISP's customers, causing many of them to find other Internet providers and causing a significant loss to CommunityISP.[8]

9.      In November 1998, less than three months after executing the Services Agreement, NetworkTwo informed CommunityISP that it was unable to fulfill the terms of the Service Agreement and requested that CommunityISP enter into another agreement with a different telecommunications carrier called SplitRock.[9]

10.     During a conference call between several representatives of CommunityISP and NetworkTwo on December 16, 1998, NetworkTwo again informed CommunityISP that it would not be able to "commit to the upgrade buildout of the existing POPs to support v.90 (56k) connectivity," that it was "unable to go forward with the KN Energy – Reno project" (a

---

[7] See NetworkTwo Documents Nos. 000501-503, 000152-155, 000591-593, and 000175-177, attached hereto as Ex D.

[8] See Ex A.

[9] See NetworkTwo Document No. 000183, attached hereto as Ex. E, and the deposition of John Lenihan, attached hereto as Ex. F (pp.75-78).

CommunityISP customer), and that it did not have "sufficient capital to fulfill the ISP requirement in the short term for SVOL [CommunityISP] (i.e. Back Office Development, POP expansion, etc.)."[10]

11.     The next day, December 17, 1998, NetworkTwo's former vice-president for Internet services, John Lenihan, sent an email to NetworkTwo's president, Al Deimaggi, informing him about the conference call with CommunityISP's representatives, stating in part:

The staff and I reviewed the KN energy and future Spring Valley requirements and decided we had to tell them that we could not support KN at all and were not going to be able to honor our build out requirements.  I told them that we could only handle small requirements and they should shift their requirements to SplitRock.[11]

12.     Despite further discussions between CommunityISP and NetworkTwo in which CommunityISP proposed terms for a reasonable resolution, CommunityISP was ultimately forced to move all of its customers to another internet service provider, SplitRock, at a significant rate increase.[12]

13.     To date, NetworkTwo has never refunded CommunityISP's $100,000.00 commitment fee.[13]

14.     As a direct result of NetworkTwo's affected transmissions, CommunityISP was required to pay another internet service provider, SplitRock, a $100,000.00 commitment fee.[14]

---

[10] See NetworkTwo Document No. 000191, attached hereto as Ex. G.

[11] See NetworkTwo Document No. 000193, attached hereto as Ex. H.

[12] See Ex. A.

[13] See Ex. B (pp. 31-33); see also Ex. J, attached hereto as Ex. J.

[14] Id. (pp. 77-78); see also Ex. J, attached hereto as Ex. J.

15.     As a direct result of NetworkTwo's affected transmissions, CommunityISP had to pay another software developer, NetSurfer, $100,000 to create the surfer kit CD-ROM that NetworkTwo expressly agreed to produce.[15]

### III.     PROCEDURAL BACKGROUND

On May 3, 1999, CommunityISP and SVMG filed a lawsuit against NetworkTwo in Louisiana, seeking a declaratory judgment in connection with a separate agreement between SVMG and NetworkTwo and a damage award in connection with the Services Agreement between CommunityISP and NetworkTwo.  On June 8, 1999, NetworkTwo removed that lawsuit to the United States District Court for the Eastern District of Louisiana.

On that same date, June 8, 1999, NetworkTwo initiated the instant litigation in this Court against CommunityISP and SVMG, seeking a declaratory judgment against CommunityISP and a damage award against SVMG.  However, upon CommunityISP's motion, the Court stayed the proceedings in this case pending a decision by the Louisiana district court on whether it would retain jurisdiction over that lawsuit.

On July 6, 1999, NetworkTwo filed a Motion to Dismiss the lawsuit in Louisiana on the grounds that the Louisiana court lacked personal jurisdiction over NetworkTwo and an Alternative Motion to Transfer the case to this Court. On March 13, 2000, after the Louisiana district court allowed some limited discovery concerning jurisdiction, the court denied the Motion to Dismiss, finding that it did have personal jurisdiction over NetworkTwo, but granted the Alternative Motion to Transfer, finding that Michigan was a more central location for the witnesses in this matter.

---

[15] Id.

On June 27, 2000, NetworkTwo filed a Motion for Rule 12(b)(6) Dismissal of CommunityISP's Counts II (fraud) and III (innocent misrepresentation).  On August 17, 2000, after some additional discovery, NetworkTwo filed a Motion for Summary Judgment on CommunityISP's Count I (breach of contract), claiming that CommunityISP's available damages were severely limited by the damage limitation provision in the Services Agreement.  After further briefing, this Court entered its Opinion and Order on February 15, 2001, granting judgment in NetworkTwo's favor on, and dismissing CommunityISP's, Counts II and III and granting judgment in part on Count I, stating:

> Therefore, Plaintiff's Motion for Summary Judgment as to Count I is GRANTED as to the issue of the legal validity of the damage limitation provisions in the Agreement.  However, pursuant to the damage limitation provisions, Defendant may recover prorated charges for any unsatisfactory transmissions or terminate the Agreement if Plaintiff has provided deficient services.[16]

On or about March 22, 2001, NetworkTwo filed a Voluntary Petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.  As a result, the instant litigation was automatically stayed.

On February 19, 2002, after extensive negotiations between CommunityISP and NetworkTwo's bankruptcy representatives, the parties agreed to lift the stay in this litigation, but to limit the pending claims as follows:

> IT IS FURTHER ORDERED, that neither Spring Valley nor CommunityISP, Inc. have any claim against the Debtor in these proceedings and all claims, if any, filed by either or both of these entities are deemed hereby withdrawn, with the Debtor releasing any claims against either of these entities and these entities agreeing to limit their monetary recovery on their claims to the Debtor's insurance carriers.[17]

---

[16] February 15, 2001 Opinion and Order, p. 12.

[17] See the February 19, 2002 Agreed Order Lifting Automatic Stay, attached hereto as Ex. I.

As a result, SVMG is no longer a party to these proceedings and CommunityISP's request for damages under its remaining claim for breach of contract is limited to those amounts recoverable under NetworkTwo's insurance policies.

## IV. ARGUMENT

**A.    There Is No Dispute that NetworkTwo**
**Breached Its Obligations In the Services Agreement**

Under Michigan law, the elements of a breach of contract claim are: (1) a contract exists between the parties; (2) the terms of the contract require performances of certain actions; (3) at least one of the parties breached the contract; and (4) that the breach of contract caused the other party injury. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999). In this matter, there is no genuine dispute that all four of these elements have been satisfied.

Indeed, there is clearly no genuine dispute that the Services Agreement exists and that its terms required both parties to perform certain actions.

There is also no dispute that NetworkTwo breached its obligations in the contract. Specifically, as set forth in the Statement of Undisputed Material Facts, NetworkTwo's own representatives admitted to CommunityISP on a conference call, and again in their depositions in this case, that NetworkTwo made the affirmative decision to not fulfill its obligations to honor its internet connection requirements set forth in the Services Agreement. As such, NetworkTwo's representatives suggested that CommunityISP should transfer its services to another provider, namely SplitRock. Furthermore, NetworkTwo has not presented any evidence in this matter that would contradict a finding that it breached its obligations under the Services Agreement. Thus, there is no genuine dispute that NetworkTwo breached the contract.

Finally, there is no genuine dispute that NetworkTwo's breach caused damages to CommunityISP. Although this Court found in its February 15, 2001 Opinion and Order that

CommunityISP could only seek those damages expressly permitted by the Services Agreement, there is no genuine dispute that CommunityISP suffered significant damages as a result of NetworkTwo's decision to not fulfill its requirements under the contract, including without limitation lost profits, having to pay higher internet access rates to other service providers, and incurring other related expenses. Thus, there is no genuine dispute that NetworkTwo's breach of contract caused CommunityISP injury.

Based on the foregoing, there is no genuine dispute that the elements of a breach of contract claim have been satisfied in this matter, and thus, CommunityISP is entitled to a judgment as a matter of law accordingly.

**B.      There Is No Dispute that CommunityISP Incurred $300,000 in
          Damages as a Direct Result of NetworkTwo's Breach of the Services Agreement**

In its February 15, 2001 Opinion and Order, this Court granted summary judgment in part, finding that CommunityISP's damage claims under Count I, breach of contract, were limited to the express provisions of the Services Agreement.  In particular, Part 7.C of the Services Agreement provides:

> NETWORKTWO'S LIABILITY ARISING FROM ANY CLAIM MADE BY
> CUSTOMER OR ANYONE ELSE RELATIVE TO ANY NETWORKTWO
> OBLIGATION   UNDER   THIS   AGREEMENT   OR   RELATING   TO
> NETWORKTWO'S NEGLIGENCE OR RELATING TO ANY OTHER CAUSE
> OR REASON SHALL BE LIMITED TO AN AMOUNT EQUAL TO THE
> PRORATED CHARGE TO THE CUSTOMER FOR THE AFFECTED
> TRANSMISSION. IN NO EVENT SHALL NETWORKTWO BE LIABLE FOR
> ANY SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, WHETHER
> OR NOT SUCH DAMAGES WERE FORESEEABLE OR ACTUALLY
> FORESEEN.[18]

Nevertheless, this Court found that while CommunityISP could not seek any special, indirect or consequential damages, it was entitled to "prorated charges for any unsatisfactory

---

[18] Ex. C (p. 3).

transmissions or terminate the Agreement if Plaintiff has provided deficient services." Thus, this Court ruled that CommunityISP could maintain this cause of action and seek damages against NetworkTwo for its breach of the Services Agreement.

As described above, NetworkTwo completely failed to deliver the internet connection services it contracted to provide, causing chronic internet connection problems. As a result of these 'affected transmissions' -- *i.e.*, NetworkTwo's failure to deliver available, reliable and fast internet connection services -- CommunityISP incurred $300,000 in direct damages. In particular, CommunityISP is entitled to a return of its $100,000.00 commitment fee, which NetworkTwo has refused to pay despite its affirmative decision to not fulfill the terms of the contract. Additionally, CommunityISP is entitled to award equal to the $100,000.00 commitment fee paid to SplitRock, which NetworkTwo's representatives suggested CommunityISP switch to after NetworkTwo admitted its inability to proceed with the contract. Finally, CommunityISP is entitled to an award equal to the $100,000.00 fee paid to NetSurfer for the surfer kit, which NetworkTwo expressly contracted to provide CommunityISP at no additional cost. None of these damages are "special, indirect or consequential damages" that are expressly excluded by the Services Agreement. Rather, these damages directly flow from NetworkTwo's failure to deliver the contracted services.

Based on the foregoing, this Court should enter judgment in CommunityISP's favor, awarding CommunityISP $300,000.00 for those expenses lost or directly incurred as a result of NetworkTwo's affected transmissions and breach of the contract.

## V. CONCLUSION

For all of the aforementioned reasons, CommunityISP respectfully submits that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law, finding

that NetworkTwo breached its obligations in the Services Agreement and that CommunityISP

should be awarded $300,000.00 in damages.

Respectfully submitted,

SMITH & FAWER, L.L.C.

By:  _____

Randall A. Smith
Andrew L. Kramer
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana  70170
(504) 525-2200


Local Counsel

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By:  _____

Cameron J. Evans (P47276)
2290 First National Building
Detroit, Michigan  48226
(313) 465-7370

Dated: October 7, 2002
DET_B\345518.1

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was
Served upon all parties to the above cause to each of the
Attorneys of record herein at their respective addresses as
Disclosed on the
Pleadings on _October 7_____, 2002

By:  ☒ U.S. Mail          ☐ FAX
      ☐ Hand Delivered     ☐ Overnight Courier
      ☐ Federal Express    ☐ Other

Signature _____Dawn Shusard_____

13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NETWORKTWO COMMUNICATIONS
GROUP, INC.

        Plaintiff/Counter-Defendant,

v.

SPRING VALLEY MARKETING GROUP
and COMMUNITYISP, INC.,

        Defendants/Counter-Plaintiffs.

_____/

Case No. 99-72913-DT

Chief Judge Lawrence Zatkoff

Magistrate Judge Morgan

Stephen M. Potter (P33344)
Daniel E. Morrisroe (P38369)
POTTER, DEAGOSTINO CAMPBELL
    & O'DEA
Attorneys for Plaintiff/Counter-Defendant
2701 Cambridge Court, Suite 223
Auburn Hills, Michigan 48326

Of Counsel:

Kevin J. O'Connor
TESTA HURWITZ & THIBEAULT
High Street Tower
125 High Street
Boston, Massachusetts 02110
(617) 248-7000

Cameron J. Evans (P47276)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Defendant/Counter-Plaintiff
2290 First National Building
Detroit, Michigan 48226
(313) 465-7370

Randall A. Smith
SMITH, JONES & FAWLER, L.L.P.
Attorneys for Defendant/Counter-Plaintiff
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana 70170
(504) 525-2200

_____/

## NOTICE OF HEARING

To:     All Counsel of Record

PLEASE TAKE NOTICE, that Defendant/Counter-Plaintiff CommunityISP, Inc.'s

motion for summary judgment will be brought on for hearing before Chief Judge Lawrence P.

Zatkoff at a time and date set forth by the Court.

Respectfully submitted,

SMITH & FAWER, L.L.C.

By: _____
Randall A. Smith
Andrew L. Kramer
201 St. Charles Avenue, Suite 3702
New Orleans, Louisiana  70170
(504) 525-2200


Local Counsel

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: _____
Cameron J. Evans (P47276)
2290 First National Building
Detroit, Michigan  48226
(313) 465-7370


Dated:   October 7, 2002


DET_B\181498.1